IN THE

# Supreme Court

OF THE

# STATE OF LOUISIANA.

EASTERN DISTRICT...MARCH TERM, 1830.

### OAKEY vs. MAYOR, & AL.

THE ordinance of the mayor, aldermen and city council of New-Orleans, of September, 1827, imposing a tax on the front proprietors of ground within the city and incorporated faubourgs for the exclusive purpose of paving the streets and making the banquets, violates neither the constitution of the United States nor that of Louisiana.

Taxation need not be uniform.

A tax laying a certain sum on the owners of all property of a particular description, is a tax on property.

The corporation of New-Orleans, have a right to lay a tax to provide for a prospective deficiency.

### Appeal from the court of the first district.

In September, 1827, the mayor and city council of New-Orleans passed an ordinance by which the front proprietors of ground within

the city and incorporated faubourgs, should, for the exclusive purpose of paving the streets and making the banquets, pay one-third part of what the city assessor should estimate the cost of the work to be done in front of their ground respectively. The ordinance embraced not only lots in front of which pavements and banquets had already been made, but also such as were unpaved, leaving it to the option of the proprietors to pay one third of the amount as assessed in cash, or to give their endorsed notes payable in 6, 12, 18 and 24 months, bearing an interest of 8 per cent. The plaintiff, who is the owner of the property situated at the corner of Bienville and Chartres-streets, gave his notes at 6, 12, 18 and 24 months for the amount of the tax imposed on him, and the present suit was brought to recover them back on the ground that the ordinance of 1827 was unconstitutional, partial in its operation, and unauthorized by the charter incorporating the city. All exceptions were waived in the court below, and the case tried on the legality of the ordinance of 1827. The district court gave judgment for the defendants and the plaintiff appealed.

*Pierce* and *Eustis* for the appellant.

*Moreau* and *Soulé* for the appellees—cited the old and new Civil Code—3d Dallas—Mo-

reau's Digest—Martin's Reports, 7th vol—do New Series, vol. 5th—Ordinances of the corporation of New-Orleans, 4th vol—Ordinances of the corporation of New-York of 1827, p. 174 and 181—and the ordinances of the cities of Boston and Charleston.

PORTER, J. delivered the opinion of the court. On the 22d of September, 1827, the city council passed an ordinance by which they imposed an annual tax for twenty years, on all the owners of lots in the city and faubourgs of New-Orleans, for the exclusive purpose of paving the streets and making banquets in front of their property; leaving, however, to the persons so taxed, the choice of exempting themselves from the annual payment of the sum charged on their property, by paying in cash the amount expended by the corporation in doing the work, or by giving their notes in four equal and annual instalments, with interest at eight per cent. for the delay of payment.

By this ordinance, the tax was demandable at once from all those in front of whose lots the work had been done, but those before whose property the pavement was not made,

were only required to pay after the execution of the work.

The plaintiff chose to give his notes at 1, 2, 3 and 4 years, for the tax imposed on him, and now contests the payment, on the ground that they were given without consideration; the ordinance being illegal, unconstitutional, and in violation of the charter incorporating the city.

The district court gave judgment for the defendants, and the plaintiff appealed.

The case has been well and elaborately discussed, and like other causes where the interests of many are involved, it has assumed an importance to which we do not think it entitled from any difficulty it presents in the decision.

To one of the propositions of the appellant's counsel the court gives its entire assent. The corporation is the creature of the legislature, and has no power but that which the creator has thought proper to bestow on it; its jurisdiction is limited; and the charter is to the city council what the constitution is to the legislature—neither can rightfully exercise any power not conferred on them. We have kept this principle steadily in view in considering the question before us.

The most natural order in which the case can be examined, is to enquire:

*First*—What powers are conferred on the corporation?

*Second*—Could these powers be constitutionally given to it by the legislature.

*Third*—Is the ordinance imposing the tax complained of, within the powers vested in the city council, supposing it to be constitutional?

I. And first, as to the power conferred. The 6th section of the act of incorporation, with other provisions in relation to the authority of the mayor and aldermen, has the following: "And the said mayor and city council shall have power to raise by tax, in such manner as to them *may seem proper, upon the real and personal estate* within the said city, such sum or sums of money as may be necessary to *supply any deficiency*, for the lighting, cleaning, paving, and watering the streets of the said city: for supporting the city watch, the levee of the river, the prisons, work-houses, and other public buildings, and for such other purpose as the police and good government of the said city may require." In this section is also found a proviso of the follow-

ing nature, "that no by-law, or ordinance to be passed by the said mayor and city council, shall have any force or effect, which is contrary to this charter, to any provisions of the constitution of the United States, or the laws of this territory." 2 *Moreau's Digest*, 111.

By an act passed in 1813, the corporation is authorized, "to determine the completion and dimensions, the maintainance, and repair of the side pavements in the said streets, at the cost of the proprietors of houses, lands or neighboring lots." In this act it is also provided, that no by-law or regulation shall have any force or effect, which is contrary to the constitution of the United States, or to the constitution and laws of Louisiana.

By these provisions it is seen, that very extensive powers are conferred on the city council, and that a great deal is intrusted to their discretion. Authority is given them to lay such taxes *as to them may seem proper*, on the real and personal property within the city, for the supplying of any deficiency which may exist in their funds. After a detailed statement of the objects to which the money so raised is to be applied, a sweeping clause grants taxation for *any purpose which the*

*police and good government of the city may require.* Not a word is said about taxation being uniform, and it may therefore be safely stated, that unless something is found in the constitution of the United-States, or of the state of Louisiana, which nullifies the ordinance in question on this ground, it will be in vain sought in the statutes empowering the corporation to levy taxes.

II. This brings us to the second question; could the legislature constitutionally confer on the city council power of so extensive a nature as that we have just examined?

The provisos in the statutes already cited, declare, all by-laws and ordinances invalid which are contrary to the constitution of the United States, and counsel have argued, that any species of taxation exercised by the corporation contrary to that which the general government could resort to, is null and void.

If the nullity of the ordinance is supposed to arise from its want of uniformity, and consequent opposition to the constitution of the United States, the answer is, that there is nothing in that instrument which requires direct taxes to be uniform. It merely declares they shall be apportioned among the respec-

The ordinance of the mayor, aldermen and city council of New-Orleans of Sept'r 1827, imposing a tax on the front proprietors of ground within the city and incorporated faubourgs, for the exclusive purpose of paving

Eastern District.
*March,* 1830.

OAKEY,
*vs.*
MAYOR & AL.

the streets & making the banquetts, violate neither the constitution of the United States or that of Louisiana.

Taxation need not be uniform.

tive states according to their numbers, and leaves to congress after that apportionment is made, the power to select such objects as they may think proper for taxation.

We have been unable to discover any thing in the constitution of the United States which would authorise us to say the ordinance was invalid, and the examination of that of our own state has brought us to the same result. There is nothing in it which requires taxation to be uniform. In the case of *Le Breton* vs. *Morgan,* where a tax had been imposed by the state on the parish of Orleans for the reimbursement of certain expenses which the governor had incurred in the attempt to stop a *crevasse* on the plantation of B. Macarty, in the year 1816, and its payment was resisted, we held the law to be constitutional and enforced it. That case so far as it respects the constitutional question involved in it, cannot be satisfactorily distinguished from the instance before us. 4 *Martin, n. s.* 138.

Since the argument, we have looked into a decision of the supreme court of Massachusetts, on a question somewhat similar to the present one. The constitution of that state

gave power to the legislature "to levy *pro-portionate* and *reasonable* assessments, rates and taxes on all the inhabitants of, and persons resident, and estates lying within the commonwealth; and also to impose and levy *reasonable duties* and excises upon any produce, goods, wares, and merchandise, and commodities whatsoever."

Under the first branch of this power, which requires taxation *to be proportionate*, the supreme court of that state considered, that a tax levied on a bank could not be justified. The exercise of the power requiring a valuation of all the property in the commonwealth, and then an assessment of each individual according to his proportion of that property. But under the second division, they held the tax to be rightfully laid: that the legislature had the same authority to tax banks, as they had to tax attornies, tavern-keepers, retailers of goods, *&c.* although other trades and professions were not made subject to taxation. 12 *Massachusetts Reports*, 254.

In our constitution, there is no such provision as that then existing in Massachusetts, which required the legislature to levy *proportionate* taxes, and if under it, the courts of that

country did not think a law compelling a bank to pay a tax was a violation of their constitution, how much less reason is there, for contending here, that taxes cannot be enforced, which are not levied equally on all. It is no doubt desirable, taxation should be uniform, and a wise legislation, as far as it is practicable, will always make burthens of this kind fall as equally as possible on the whole of the community. But *uniformity, in the sense for which the appellant contends,* would annul all the fiscal laws of the state. The man whose lands and slaves were taxed, might to-morrow, on the principle urged, enjoin the sheriff from collection, because the cash of his neighbor which was used in market, buying bills and discounting notes, was not made contributory to the public revenue. The merchant and auctioneer could resist the payment of taxes levied on them, because mechanics and farmers were not assessed in the same way. The *constitution* we think has confided to the legislature the power of selecting such property as they may deem proper for taxation, and all the latitude which under it they possess, in relation to real and personal property, they have transmitted to the corporation by the charter.

But it is said, this power may be applied to Eastern District. *March*, 1830.

OAKEY
*vs.*
MAYOR & AL. the most iniquitous purposes,—that in the exercise of it a particular class of persons, or a single individual might be selected as the victims of legislative or corporate oppres-sion, and be compelled to pay all the expenses of the state; or that under the pretence of raising revenue, the whole fortune of a citizen might be wrested from him. General principles cannot be settled by supposing extreme cases. When they arise, they present exceptions, and are governed by other rules. It is not necessary for us to say in this case whether there is not in the constitution of every free country, certain fundamental principles, under which the citizen can find shelter and protection in extreme cases. We will think of that, when a case arises which requires us to do so. But on an enquiry whether a certain power is conferred by the constitution, we cannot come to the conclusion it does not exist, because it may be abused. Juries could not try causes, nor courts decide them, if this was the test by which their authority was to be tried. Because a law might be passed plundering a citizen under the pretence of raising revenue, and therefore void; it does

Eastern District.
*March*, 1830.

OAKEY
*vs.*
MAYOR & AL.

not follow that all inequality in taxation draws with it the same consequence. The difficulty of establishing *perfect uniformity*, was the reason why the constitution did not affix limits to legislative authority, and while the discretion intrusted, is used for the purposes for which it was conferred, and in the spirit with which it was granted, we see no ground for declaring it void.

The tax levied by the corporation on all persons owning property in the city, in front of which the streets had been paved, and on all persons in front of whose lots pavement might hereafter be made, does not present a case of extreme injustice. Indeed we have been unable to discover any thing unjust in it, and it is as uniform as any taxation in relation to the subject matter could well be. It falls alike on all, who stand in the same situation.

It is shown that in the cities of New-York and Boston, the same burthen is imposed on the owners of property fronting the streets, and the acquiescence of such intelligent communities, in the justice and constitutionality of these regulations, has been properly presented to us as an argument in favor of the

same construction being given to the ordinance of this city.

III. The last question is, whether independent of any objection to the constitutionality of the ordinance, it is within the powers granted to the corporation. To this point the principal part of the arguments addressed to the court on behalf of the appellant, has been directed.

The first objection is, that by the charter the corporation is authorized to tax *real and personal estate*, and that the tax now complained of is on real estate alone.

It does not appear to us, that the power given to tax real and personal estate, renders it imperative on the corporation to tax both. By the same section of the law, the city council are empowered to exercise their authority *as to them may seem proper.*

The next objection is, that the law was retrospective in its operation, because the citizen was taxed for work already done. Admitting this was the reason which induced the passage of the ordinance, we do not see how the motives of the law maker can make the law retrospective and void, unless the party complaining could show he had a vested

right not to be taxed. The same objection would exist against all laws for raising revenue when the state or corporation was indebted for money expended for purposes of public utility. It was contended on another branch of this part of the case, that the corporation could only levy a tax to supply *an actual deficiency* in its funds. Now as no actual deficiency could arise until the corporation was in debt, it would follow that if both objections were true, the corporation could not levy a tax for work that was to be done, because the deficiency would be prospective, and it could not supply an actual one, because it was retrospective, and we should thus come to a conclusion that the corporation could not levy any tax. This we cannot do. The plain intent and meaning of a law cannot be destroyed in this way by professional ingenuity. Nor do we think there is any more force in another objection akin to this just disposed of, namely, that the plaintiff having bought the property since the pavement was made, is now taxed for a benefit done to another. All men acquire property knowing that it is subject to taxation, and if that property could have been rightfully taxed in the hands of the

vendor, it can in those of the vendee. If the state was in debt, and an extraordinary tax was laid to discharge it, could the holders of land and slaves, resist the payment, on the ground that they did not own the property at the time the state became indebted? Who ever heard of such an objection? And yet on principle it cannot be distinguished from that which the appellant makes.

It was next said, this was not a tax, or at least not a tax on property: it was an assessment on individuals, in consequence of the situation in which their property was situated.

It appears to us a tax, and a tax on property. Because it is only on persons holding property, and because they do hold it, that the tax is imposed. Where is the difference between saying all lots are to be taxed ten dollars, to be paid by the owners, or declaring that all owners of lots shall pay a tax of ten dollars? There is some in the words, but none in the thing. It is still a tax on the property. The argument addressed to us on this head, was quite too refined for any practical purpose. The land tax of the state in every parish might be attacked by the same ingenious reasoning. An inhabitant of St. John the Bap-

A tax laying a certain sum on the owners of all property of a particular description is a tax on property.

tiste might say with the same truth and force, the parish I live in is taxed $1400, it is therefore a tax of situation, in consequence of my holding property there, and it is a personal tax, not one on property, because I have to pay it.

Lastly, and with most earnestness it was pressed on us, that the corporation was only authorized to lay taxes to supply a deficiency in their funds, and that no such *deficicney* was shown to exist at the time the ordinance was passed.

The account of the city for the year 1827 is produced. It exhibits receipts to the amount of $210,729 45 cents. The expenses are $196,502, leaving a balance in the hands of the treasurer of $14,226 73 cents—there was therefore no actual deficiency.

If the argument of the appellant was correct, this circumstance would raise doubts of the legality of the tax in question. Our examination of the law has however satisfied us, that the position assumed cannot be maintained. The *actual deficiency* contended for, could only exist, where the corporation was indebted on contracts, or engagements, and could not discharge them, or where the

whole police of the city was stopped for want of funds to meet the daily expenses of the corporation. If it was on the occurrence of these contingencies alone, the legislature intended to vest the city council with the power of taxation, a grant of very singular powers was certainly contemplated. They would render the corporation completely inefficient. For if it could never raise money by taxation until it had violated its contracts, or was without funds to meet its daily or weekly expenditures, few would trust it, or few would serve it. Unless the language of the charter imperatively requires such a construction, the court cannot be expected to adopt it. We do not think it does. The words used, should receive such an interpretation as will best promote the purposes the legislature had in view. The terms *to supply a deficiency*, were evidently thrown into the statute, instead of a general power to tax, because the city derived revenue from other sources, which might render taxation unnecessary. There is nothing therefore in the enactment which indicates jealousy on the part of the law-maker, or requires a strict construction of the power, beyond the fair import of the language, consi-

Eastern District.
*March* 1830.

OAKEY
*vs.*
MAYOR & AL.

The corporation of N. Orleans have a right to levy a tax to supply a prospective deficency.

dered in relation to the subject matter. It does not appear to us that it prevents the corporation anticipating a want of funds, and providing the means of discharging its obligations, before the day of payment arrives. We think there is *the deficiency* contemplated by the charter, whenever the city wants funds to *commence* public improvements, clearly as there would be if these improvements were *completed,* and there was no money in the treasury to pay for them, and that consequently the corporation may lay taxes to meet the engagements it is about to enter into, as well as those which are already made.

Under this view of the case there is nothing on record which shows a violation of the charter, and it is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.