## Matter of the New Orleans Improvement and Banking Company.

The proviso in the statute of 27 March, 1843, amending article 3333 C. C., which declares that that act shall not apply to certain mortgages in favor of the property banks, is not restricted to stock mortgages executed in favor of those banks, nor to those made directly to them, but extends to mortgages which have been acquired by subrogation; and where the subrogation was by authentic act, and recorded where similar contracts are required to be recorded, third persons will be affected by notice without any inscription in the books of the recorder of mortgages. [*On this point, the Court being equally divided, the judgment below was affirmed.*]

The statute of 27 March, 1843, was intended to enlarge the effect of the statute of 11 March, 1842, amending art. 3333 C. C. It does not follow because these statutes are exceptional, that they should be construed strictly. The construction should be such as will advance the object of the legislature. [*On this point, the Court being equally divided, the judgment below was affirmed.*]

Section 19 of the statute of 9th February, 1836, incorporating the New Orleans Improvement and Banking Company, does not exempt from taxation real estate held by the company. The exemption extends only to its capital stock.

The proviso of section 7 of the statute of 20th March, 1840, amending the charter of the city of New Orleans, limiting the privilege conferred by that section to two years, applies only to claims for paving, and not to amounts due for taxes.

The penalty imposed by section 9 of the statute of 9th February, 1836, incorporating the New Orleans Improvement and Banking Company, which declares that if the said company shall, at any time, suspend or refuse payment in lawful money of the United States of any of its notes, bills, or obligations, the holder of any such note, bill, or obligation, or person entitled to demand and receive such money, shall be entitled to receive interest thereon from the time of such suspension or refusal, until fully paid, at the rate of twelve per cent a year, cannot be recovered without a demand of payment of each note, and proof of failure to pay, and then only from the date of such demand and failure. The suspension of specie payments by the bank, will not relieve the holder from the necessity of making such a demand, to entitle him to interest at that rate.

Where an account presented by commissioners appoint to liquidate the affairs of a banking company, has been homologated so far as not opposed, the judgment of homologation will be conclusive against a creditor who made no opposition below. An appeal taken by a creditor under such circumstances cannot be entertained, without an assumption of original jurisdiction by the Supreme Court.

By the statute of 15th March, 1830, section 11, the legal mortgage on real estate in favor of the State for taxes imposed on it, is limited to two years from the time when such tax became due.

APPEAL from the Third District Court of New Orleans, *Strawbridge*, J., presiding. *Elmore*, Attorney General, for the State. *T. A. Clarke*, for Corning & Co. *Marsoudet*, for the Commissioners and for *Alvarez*. *D. N. Hennen*, pro se. *Pitot*, for the Citizens Bank. *W. W. King*, for the General

Council. *Schmidt*, for *Justamond.* The judges being equally divided in opinion on some of the points in this case, the judgment of the lower court was, on these points, affirmed, under article 68 of the constitution.

ROST, J.   Oppositions were made by several of the creditors of the *Improvement and Banking Company* to the final tableau of distribution filed by the commissioners appointed to liquidate that institution; and the various appeals presented by this record, have been taken from the judgments rendered on those oppositions.

The most important error to which our attention is directed is assigned by *J. Corning & Co.*, who are note holders, and claim to be paid out of the proceeds of the real estate, under a mortgage subscribed in their favor by the bank, in 1842. They allege that the District Court erred in giving the precedence to the mortgage of the Citizens' Bank, on the same property, after it had lost its rank for want of reinscription.   The facts material to this part of the case are as follows:

On the 22d of May, 1835, *Dominique Seghers* sold to the Improvement Bank the land on which the St. Louis Hotel stands.   A part of the price was paid in cash, and for the balance of $200,000, it was stipulated that the bank might, within a given time, elect to pay it, or to furnish in satisfaction thereof her bonds to that amount, bearing interest payable in 1850.   The bank elected to give bonds, and accordingly, on the 21st of March, 1836, the bonds were executed and secured by an act of mortgage of that date.   They were paraphed to identify them with the act, and delivered to *Seghers.*   The act of 22d of May, 1835, was duly recorded on the current register of the recorder of mortgages, on the 30th May following.   The act of 21st March, 1836, securing by mortgage the bonds referred to, was recorded on the 28th of the same month, not in the current register, and in the order of time, but upon the margin of the record of the act of the 22d of May, 1835.   On the 14th April, 1840, *Seghers* sold the bonds to the Citizens' Bank, who took from him a transfer of the bonds and subrogation to the mortgage given to secure them, by notarial act.   This act was also presented to the recorder of mortgages for recording, and he did accordingly record a memorandum of it, not in the current register, in the order of time, but on the margin of the record of the act of the 22d of May, 1835, and following the record of the act of the 21st March, 1836.

In 1848 this controversy arose between the Citizens' Bank and the note holders, each contending for a priority in rank, as mortgagees on the property sold by *Seghers.*   The note-holders allege that the only valid inscription is that made in the order of its date, in May, 1835; that the subsequent inscriptions having been made in the margin of this, though subsequent in date, cannot affect them, because they are not bound to look more than ten years back from 1845.   The Citizens' Bank, on the contrary, maintains that the recording of the act of subrogation of the 14th April, 1840, was a new and a later inscription, by which a new creditor gave notice of his claim; that, under art. 3330 C. C., a creditor is competent to make an inscription of a public act, or of a judgment in his favor, and that no agency of the debtor is required therein.   That art. 3356 C. C. requiring mortgages to be recorded in the order of their date, without leaving any intervals between them, is merely directory to the recorder.   They further argue that it is unnecessary to enquire into the question of reinscription, because, under the provisions of an act of 1843, amending art. 3333 C. C., no reinscription was necessary.   The District Court dismssed this opposition, and recognized the right of mortgage claimed by the Citizens' Bank.   The opponents have appealed.

The court being equally divided on this opposition, I will proceed to state the reasons of the opinion I have formed.

The act relied on by the Citizens' Bank in support of the proposition that no reinscription was necessary, is in these words:

" Be it enacted that art. 3333 of the Civil Code be so amended that, it shall be the duty of the recorder of mortgages, and of judges performing the like duties, to cancel and erase, on the single application in writing to that effect, by the owner, creditor of the owner, or other party interested, all inscriptions of mortgages which have existed or may exist on their record for a period exceeding ten years, without a renewal of such inscription : *provided*, however, that this section shall not apply to mortgages against husbands for the dotal or other claims of their wives, to mortgages against tutors and curators in favor of minors, interdicted or absent persons, *nor to such mortgages in favor of the property banks.*"

The words, *such mortgages*, have not a precise meaning. But in the french text the general description of *hypothèques consenties en favuer des banques hypothécaires*, is made use of.

The appellants argue that, this act must be construed with an act of 1842, which provides that the rules requiring the reinscription of mortgages shall not apply to mortgages which have been or may be given by the stockholders of the various property banks, and that its application should be limited to stock mortgages. That, if it embraces other mortgages, it can only be those given directly to the bank, not those acquired by subrogation, as this has been. That, if it extends to mortgages acquired by subrogation, it is necessary that the subrogation should be duly inscribed in the book of the recorder of mortgages, and that the inscription in this case, in the book of 1835, of a memorandum, defective in form, is insufficient.

There is no reference to the act of 1842 in that of 1843. The latter purports to be a direct amendment of the article of the Code, and the reason and policy which induced the first exception, lead me to the conclusion that it was intended to be enlarged by the second enactment. It does not follow that, because this legislation is exceptional, it should be construed strictly. It is one of the means resorted to by the legislature to secure the State against loss on the bonds issued in favor of the property banks; and when the meaning of their enactments is not free from ambiguity, I consider it my duty to make such construction as will advance the object they had in view. I do not think that the words used in the statute were intended to limit its application either to stock mortgages, or to those given directly to the property banks. It is doing no violence to language to consider all mortgages owned by them as mortgages in their favor, under the statute, without reference to the manner in which they have been acquired.

The subrogation in this case was made by authentic act, and recorded where the law required similar contracts to be recorded ; this affected the opponents with notice without any inscription in the books of the recorder of mortgages. It was good against all the world as an alienation. It matters not, therefore, whether the memorandum, inscribed in the office of the recorder of mortgages, was defective as an inscription, or recorded out of its proper place. It was at least notice of the subrogation to the recorder ; and, under the provisions of the act of 1843, he could no longer cancel the mortgage.

After the subrogation to the Citizens' Bank, in the manner already stated, this mortgage stood, under the act of 1843, in the same position as mortgages against husbands, tutors and curators.

60

That the legislature intended the reserved inscriptions to continue in force, cannot, upon any rule of construction, admit of a doubt. This legislation no more impaired the obligations of the contract between the bank and the holders of its circulation, than all the other exceptional laws passed of late years, in relation to banks, have impaired those obligations. Registry laws are essen-- tially under the control of the legislature, who may at all times dispense with reinscriptions. I am of opinion that no reinscription was necessary, to preserve the rank of the mortgage of the Citizens' Bank.

The Citizens' Bank has appealed, and alleges that it is aggrieved by the following dispositions of the judgment : 1. All those declaring that the property of the Improvement and Banking Company is subject to taxation, the same being exempted by the 19th section of their charter. 2. The one allowing a privilege to municipality No. One, for the whole amount of their claim, while the same, if due at all, is reduced by law to the last two years.

The 19th section of the charter of the Improvement and Banking Company, provides that the capital stock of the company shall be exempt from taxation. The taxes claimed were not levied upon the capital stock. They are taxes on real estate, which the company was of course bound to pay.

We concur with the judge of the District Court that, under the 7th section of the law of 1840 (Sessions Acts, p. 51), the municipality No. One, has a privi- lege for taxes due them, and that the proviso at the end of the section limiting their privilege to two years, is applicable to the claim for paving only.

The Commissioners of the Improvement and Banking Company have appealed from the following dispositions of the judgment. 1. The one allowing to the Citizens' Bank the sum of $4,693 32, the amount of rents received since the St. Louis Hotel was seized by the sheriff, under their mortgage. 2. The one allowing interest at the rate of twelve per cent per annum to the holders of the notes, from the suspension of specie payments.

It appears that, after the Improvement and Banking Company had gone into voluntary liquidation, the Citizens' Bank seized the St. Louis Hotel, under the mortgage to which they had been subrogated by Seghers. It was understood between the parties that, in order to save costs and to prevent delay, the seizure should be permitted to go on, the legal right of the Improvement Bank to resist the seizure and sale being reserved. During the continuance of the seizure the rents mentioned in the last petition of appeal accrued, and the court allowed them to the Citizens' Bank. The appellants contend that there is error in this part of the judgment: 1. Because the privilege granted to the Citizens' Bank, by the 26th section of its charter, was not applicable to the present case. 2. Because, even if this privilege actually existed, the Citizens' Bank could not avail itself of it, because it had become a party to the concurso.

These grounds assume that the Improvement and Banking Company was liqui- dated as an insolvent concern. The reverse is manifestly true. They gave security to the satisfaction of the board of currency for their deposits and circu- lation, and remained in possession of their assets as a solvent corporation. Their charter was never declared forfeited by a decree of court. The liquidation, on their part was voluntary, and it was managed exclusively by the stockholders without any participation or interference on the part of the creditors. There was no concurso, and the Citizens' Bank had the right to proceed as they have- done. The right to the rents is not contested, if the seizure is considered valid.

In the case of *Bartlette* v. *The New Orleans Canal and Banking Company*, 1 Rob. 543, our predecessors held that, the interest allowed by the charter of a bank, when it suspends specie payments, is not due from the time of the suspension, but only from the day of the demand of payment by the note-holder. We adhere to the decision of the court in that case, and are of opinion that the judgment must be amended, so far as it allows interest on the circulation without a demand.

Under the views expressed in *Girod* v. *His Creditors*, 2 Annual, 546, we can take no notice of the appeals of *Duncan N. Hennen* and *P. Alvarez*. *Mr. Hennen* filed no opposition in the District Court, and the judgment homologating the account, so far as not opposed, is conclusive against him. We could not entertain his appeal without assuming original jurisdiction of the opposition first made by him in this court. *Alvarez* is in the same situation.

The attorney general made opposition, claiming a privilege for the whole amount of the taxes due on the real estate of the company. The judgment having limited the privilege to the taxes of the last two years, he prays that it be amended. Whatever may have been the state of the law before the passage of the act of 1830, it appears to us that the district judge decided correctly, under the provision of that act, limiting the privilege of the State to the taxes of the last two years.

The only appeal which remains to be noticed is that of the General Council, which is taken from the judgment of the District Court, disallowing a privilege for the taxes due them. The opposition originally made was founded upon a judgment obtained against the Improvement Bank, with privilege on the St. Louis Hotel. But the Citizens' Bank was not a party to these proceedings, and the District Court, considering that the laws giving a privilege to the several Municipalities for their taxes, make no provision for those due to the General Council, dismissed the opposition.

It is urged that the tax claimed was imposed by the police jury, who had the power necessary for laying such taxes as they might judge necessary to defray the expenses of the public works of their respective parishes. That these taxes are merely assessments on property, and attached to the property itself, and not to the person who may at the time be the owner, in consequence of which a privilege exists upon the property, although no express law gives it. The case of *Oakey* v. *Mayor et al.*, 1 La. 15, is cited in support of these views.

We are unable to distinguish the taxes imposed by the General Council from those levied by the Municipalities. They are all of the same nature, and under the settled jurisprudence of this court in matters of privilege, the court below decided correctly.

KING. J. I concur in the opinion read by Mr. Justice Rost, and adopt the reasons which he has assigned.

SLIDELL, J. If this were a contest between ordinary persons, I should have no hesitation in concluding that the mortgages to secure the bonds given to *Seghers* would have been gone as to third persons, for want of reinscription. The policy of the law, requiring inscriptions to be renewed every ten years, and dispensing the public from searching beyond that time, would be defeated by a contrary construction.

I cannot concur in the argument that, the recorder may adopt his own mode of keeping his books; and that, if parties want information, they ought to get his certificate, which he, understanding his own books, will so make as to include all outstanding mortgages. One is not bound to get the recorder's certificate; but

has a right to go and inspect the books himself.  Civil Code, 3363.  Act of 1826, p. 62.  In making that inspection, the law does not require him to search back more than ten years.  1 do not wish to be understood as saying that, a mortgage *fully* inscribed in the book for the year 1840, although the actual date of its inscription was in the year 1841, would be ineffectual *ab initio*, against other mortgagees.  Perhaps the inscription, being formal in other respects, would protect the party until the year 1850 ; but when the mortgage book of 1840, became superannuated by the lapse of ten years, a party searching is not bound to look in that book, so far as ordinary mortgage creditors are concerned.  It was expressly said in *Shepherd's* case that, the object of reinscription is to dispense from searching more than ten years back.

If, as was said in the case of *Shepherd*, a reinscription made in January, 1846, in the book of that year was void, because it does not in itself contain a description of the mortgaged property, but merely a reference to the description in an antecedent inscription, in January, 1836, *a fortiori*, a defective reinscription in the book of 1835, upon the margin of an act inscribed in 1835, must be held of no effect in 1848.

The next enquiry is, whether the Citizens' Bank, the subrogee of the mortgage given by the Improvement Bank, stands, *quoad* that mortgage, on the same footing as an ordinary person.  In consideration of the interest of the State in the so called property banks, the legislature thought proper to engraft upon the general law, an exception in their favor, by the act of 1842, entitled an act to amend art. 3333 of the Civil Code.  By this statute it was enacted that, the article be so amended that, the rule requiring the re-inscription of mortgages at the expiraration of ten years from the date of their registry, shall not apply to the mortgages which have been, or may be, given *by the Stockholders of the various property banks of this State*.  It is perfectly obvious that, this act does not cover a mortgage given by the Improvement Bank to *Seghers*.

Is the case aided by the act of 1843, entitled an act to amend article 3333 of the Civil Code ?  By this statute, authority is given to the recorder of mortgages to cancel inscriptions that have existed for ten years, without a renewal of such inscription ; provided, however, that this section shall not apply to mortgages against husbands, for the dotal and other claims of their wives, to mortgages against tutors and curators, in favour of minors, interdicted, or absent persons, nor to such mortgages in favour of the property Banks—*ni aux hypothèques consenties en faveur des Banques hypothécaires*.

Now, here, the dispensation of a general duty, imposed upon every body, and from which the property banks had, under the preëxisting law, been exempted, in the sole case of mortgages given to them by their stockholders, is inferred by way of a negative pregnant.  Even admitting that the grant of dispensation may be so inferred, it seems to me that such an inference, establishing an exemption in derogation of common right, should be restricted to the express class of mortgages designated in this proviso—that is to say, mortgages in favour of the property banks—*hypothèques consenties en faveur des Banques hypothécaires.*—The utmost latitude, which, on sound principles of construction, would seem admissible in favor of the property banks, would be to consider this inferential legislation as covering all mortgages given by any mortgagor directly to them ; especially when we remember that the act of 1842, which, it is reasonable to presume, was in the contemplation of the legislators of 1843, gave the property banks a dispensation in a much more limited class of cases, to wit, mortgages given to them by stock-holders.

However, it is not now necessary to give an unqualified opinion upon the extent of the exemption, as regards the origin or nature of the morgage. Another view seems to me conclusive of this case.

If the exemption from reinscription is to be extended, under the act of 1843, to mortgages not given to the property banks originally, but held by them as subrogees, it is, at any rate clear that, the subrogation should be duly inscribed. The public should be duly informed, that the mortgage has passed into the hands of a favored class of creditors, exempted from the necessity of reinscription. This certainly was not done by inscribing in the book of 1835, in the margin of the original mortgage, a mere memorandum, defective in itself, that *Seghers* had transferred the mortgages of 1835 and 1836 to the Citizen's Bank. Nor can I perceive how the fact of the subrogation being made by a notarial act, relieved the Citizens' Bank from the necessity of recording the subrogation in the mortgage office.

I therefore dissent from the decree rendered in this cause.

EUSTIS, C. J. My opinion is that, the act of 1843 does not apply to the case of a mortgage like that under consideration; and, consequently, I concur in the view taken by Mr. Justice Slidell, and dissent from the opinion of the other judges.

ROST, J. The court being equally divided, on the opposition of *J. Corning & Co.* to the mortgage claim of the Citizens' Bank, on the ground of want of reinscription of the mortgages, it is ordered that, the judgment of the District Court on that opposition stand affirmed. It is ordered that the judgment on the other oppositions be amended, so as to allow interest at the rate of twelve per cent per annum on the circulation, from the day of the demand of payment, instead of allowing it from the suspension of specie payments. It is ordered that the judgment, as amended, be affirmed, and that the account of distribution be rendered in conformity with the foregoing opinion. It is is further ordered that one-half of the costs of the court below be paid by the Improvement Bank, and that the remainder of those costs, and those of this appeal, be paid by the other appellants.