STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2018 KA 1796

STATE OF LOUISIANA

VERSUS

CHADDRICK PIPER

Judgment Rendered: SEP 2 7 2019

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge,
State of Louisiana
Docket Number 04-15-0203

Honorable Michael R. Erwin, Judge Presiding

\*\*\*\*\*\*\*\*\*\*\*\*\*

Hillar C. Moore, III
Dale R. Lee
Baton Rouge, LA

Counsel for Appellee,
State of Louisiana

Meghan Harwell Bitoun
New Orleans, LA

Counsel for Defendant/Appellant,
Chaddrick Piper

\*\*\*\*\*\*\*\*\*\*\*\*\*

BEFORE: WHIPPLE, C.J., GUIDRY, AND CRAIN, JJ.

**WHIPPLE, C.J.**

The defendant, Chaddrick Piper, was charged by bill of information with domestic abuse battery (involving strangulation) (count 1), a violation of LSA-R.S. 14:35.3(L); and home invasion (count 2), a violation of LSA-R.S. 14:62.8. The defendant pled not guilty and waived his right to a jury trial. Following a bench trial, the defendant was found guilty as charged on count 1; on count 2, he was found guilty of the responsive (lesser and included) offense of unauthorized entry of an inhabited dwelling, a violation of LSA-R.S. 14:62.3. See State v. Lattin, 51,372 (La. App. 2nd Cir. 5/2/17), 219 So. 3d 511, 512. The State subsequently filed a habitual offender bill of information. The defendant admitted to the allegations in the habitual offender bill. The defendant was adjudicated a third-felony habitual offender, and for the domestic abuse battery conviction, he was sentenced to six years imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence. For the unauthorized entry of an inhabited dwelling conviction, he was sentenced to four years imprisonment at hard labor. The sentences were ordered to run consecutively. The defendant now appeals, designating five assignments of error. For the following reasons, we affirm the convictions, vacate the habitual offender adjudication and sentences, and remand to the trial court for resentencing.

## FACTS

Breah Monday and the defendant had an on-and-off relationship for several years. They had one son together. In 2013 and 2014, while living together in Baton Rouge, the defendant and Breah were involved in several altercations, wherein the defendant physically attacked Breah. In October of 2013, the defendant was arrested and charged with domestic abuse battery (involving strangulation) of Breah. In April of 2014, Breah obtained a protective order against the defendant. In December of 2014, the defendant was again arrested for

2

domestic abuse battery of Breah, as well as violation of a protective order. He pled guilty to the charges and was sentenced to incarceration.

While the defendant was incarcerated, Breah married another man. On February 3, 2015, the defendant was released from jail. The defendant's mother picked up the defendant and brought him to South Harrells Ferry Road to an apartment that he and Breah had shared to retrieve his belongings. Breah was home alone when the defendant arrived and rang the doorbell. Before she could answer, the defendant walked in, closed the door and locked it. The defendant asked Breah about the other man, and they began arguing. The defendant made Breah go to the bathroom and run water in the bathtub. With water in the tub, the defendant pushed Breah in (with her back facing the water) and held her down. Breah hit and kicked the defendant, and he eventually pulled her out of the tub. They continued to struggle. The defendant began choking Breah, and she lost consciousness. When she regained consciousness, she changed her clothes, and she tried to get out of the apartment. However, the defendant stopped her, slapped her head and punched her in the face. The defendant's mother came into the apartment, and he stopped attacking Breah. All three of them gathered the defendant's belongings, including clothes and two televisions, and brought them to the defendant's mother's vehicle. After the defendant left with his mother, Breah called the police and made a written statement.

The defendant testified at trial. The defendant testified that Breah invited him into the apartment. He also denied that he held her underwater in the bathtub or that he choked her.

## ASSIGNMENTS OF ERROR NOS. 1 and 2

In these related assignments of error, the defendant argues, respectively, the trial court's failure to hold a Prieur[1] hearing violated due process; and the trial court erred in considering evidence of prior crimes.

Prior to trial, the State filed notice of intent to introduce evidence of other crimes, bad acts, or wrongs, pursuant to LSA-C.E. art. 404(B). According to the State, the defendant previously committed similar crimes or acts that show that the defendant had engaged in a pattern of volatile behavior with his family or partner. The State provided the following four instances of other acts. On October 18, 2013, the defendant was taken into custody and charged with domestic abuse battery (by strangulation) of Breah. On November 22, 2013, the defendant was taken into custody and charged with domestic abuse battery of Breah. On November 26, 2013, despite Breah relocating to avoid the defendant, the defendant found her at her new location, pulled her outside of the apartment, and attempted to get Breah to leave the complex with him. Breah refused to leave, and the police were called. On April 24, 2014, the defendant again attacked Breah. The defendant was handcuffed and taken to the parish prison.

In the first assignment of error, the defendant argues in brief that the trial court erred in failing to conduct a pretrial Prieur hearing to determine the admissibility of the other crimes evidence. This other crimes evidence, according to the defendant, was weak and contained several "evidentiary holes." The defendant suggests trial testimony about these other crimes was highly prejudicial to him. In his second assignment of error, the defendant further contends that the trial court erred in considering the other crimes evidence because such evidence was not independently relevant to show motive, opportunity, knowledge, or absence of mistake. According to the defendant, the trial court failed to determine

---

[1]State v. Prieur, 277 So. 2d 126 (La. 1973).

whether the evidence was relevant and whether its probative value was outweighed by unfair prejudice to him. See LSA-C.E. art. 403. The defendant suggests that the trial court seems to have accepted the State's assertion regarding the LSA-C.E. art. 404(B) evidence "without evaluation, confrontation, or testing."

The State cannot introduce evidence of other crimes without first conducting a pretrial hearing at which it must prove the defendant committed the other crimes and that they are admissible under Article 404(B). State v. Taylor, 2016-1124 (La. 12/1/16), 217 So. 3d 283, 292. However, not every violation of pretrial procedures (including Prieur violations) requires reversal, and before a defendant can complain of such a violation, he must show prejudice. State v. Sanders, 93-0001 (La. 11/30/94), 648 So. 2d 1272, 1284, cert. denied, 517 U.S. 1246, 116 S. Ct. 2504, 135 L.Ed.2d 194 (1996); State v. Pardon, 97-248 (La. App. 5th Cir. 10/15/97), 703 So. 2d 50, 57, writ denied, 97-2892 (La. 3/20/98), 715 So. 2d 1207.

The defendant herein did not object to any of the other crimes evidence the State sought to offer. The defendant did not file a motion in limine or a motion to exclude the evidence, an answer to the State's notice of intent, or any motion whatsoever, to traverse the State's intent to use other crimes evidence at trial. In his motion for discovery filed April 23, 2015, the defendant requested notice of the State's intention to use other crimes evidence and for a hearing on the admissibility of the evidence. Five months later on September 25, 2015 (about four and one-half months before trial), the State filed its LSA-C.E. 404(B) notice of intent. There is nothing in the record before us that indicates a Prieur hearing was held. If such a hearing was not held, the defendant made no objection to this on the record. The only indication that the other crimes evidence was considered pretrial was the trial court's following statement at the beginning of trial, "From reading the motions, I'm going to allow the evidence to come in." The defendant lodged no objection to this.

5

At trial, the defendant made no objections during the testimony as to the incidents constituting the other crimes evidence, except one. When Breah was asked about one of the incidents in November between her and the defendant, she provided a somewhat wandering narrative, to which defense counsel objected, stating: "Judge, at this time I have to object. The reason I'm objecting, we've kind of covered the issue about the 404, and I've allowed her to kind of get into it a little bit. But, I mean, to me, she's kind of drawing it out." As indicated, counsel's stated basis for objecting to Breah's testimony was limited to her verbosity in "drawing it out." Defense counsel did not object to the other crimes evidence on the grounds articulated on appeal, namely that the State failed to provide sufficient proof of the other crimes and that the evidence was unduly prejudicial.

To preserve the right to appeal the introduction of testimony, the defendant must make a timely objection and state the specific grounds of objection. LSA-C.E. art. 103(A)(1); LSA-C.Cr.P. 841; State v. Sosa, 328 So. 2d 889, 892 (La. 1976); State v. Dilosa, 2001-0024 (La. App. 1st Cir. 5/9/03), 849 So. 2d 657, 671, writ denied, 2003-1601 (La. 12/12/03), 860 So. 2d 1153. A defendant is limited on appeal to the grounds for the objection that were articulated at trial. State v. West, 419 So. 2d 868, 876 (La. 1982); State v. Patton, 2010-1841 (La. App. 1st Cir. 6/10/11), 68 So. 3d 1209, 1216. Thus, the defendant is barred procedurally from advancing these assignments of error. See State v. Wisinger, 618 So. 2d 923, 927 (La. App. 1st Cir.), writ denied, 625 So. 2d. 1063 (La. 1993).

The lack of any motions or contemporaneous objections notwithstanding, we find that the other crimes evidence was clearly admissible and not unduly prejudicial to the defendant. Louisiana Code of Evidence article 404(B)(1) provides:

> Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be

6

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. In order to avoid the unfair inference that a defendant committed a particular crime simply because he is a person of criminal character, other crimes evidence is inadmissible unless it has an independent relevancy besides simply showing a criminal disposition. State v. Lockett, 99-0917 (La. App. 1st Cir. 2/18/00), 754 So. 2d 1128, 1130, writ denied, 2000-1261 (La. 3/9/01), 786 So. 2d 115. The trial court's ruling on the admissibility of other crimes evidence will not be overturned absent an abuse of discretion. See State v. Galliano, 2002-2849 (La. 1/10/03), 839 So. 2d 932, 934 (per curiam). When seeking to introduce evidence pursuant to LSA-C.E. art. 404(B), the State need only make a showing of sufficient evidence to support a finding that the defendant committed the other crime, wrong, or act. Taylor, 217 So. 3d at 291.

Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. LSA-C.E. 401. All relevant evidence is admissible except as otherwise provided by positive law. Evidence which is not relevant is not admissible. LSA-C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or waste of time. LSA-C.E. art. 403.

7

We find nothing improper in the trial court's determination that the other crimes evidence was admissible. All of the other crimes evidence was introduced at trial through Breah, who was both the victim in these proceedings and the victim in her past confrontations with the defendant. Such testimony was not impermissible other crimes evidence to show bad character or a criminal disposition; rather, it had independent relevance to the issues of motive, opportunity, and intent. See LSA-C.E. art. 404(B)(1); State v. Johnson, 2015-528 (La. App. 5th Cir. 12/9/15), 182 So. 3d 378, 388-89, writ denied, 2016-0028 (La. 2/24/17), 216 So. 3d 61; State v. Greenberry, 2014-0335 (La. App. 4th Cir. 11/19/14), 154 So. 3d 700, 709-10, writ denied, 2014-2656 (La. 10/9/15), 178 So. 3d 1000. The probative value of such evidence was not substantially outweighed by the danger of unfair prejudice. Any prejudicial effect was outweighed by the probative value of such evidence. See LSA-C.E. art. 403; State v. Scales, 93-2003 (La. 5/22/95), 655 So. 2d 1326, 1330-31, cert. denied, 516 U.S. 1050, 116 S. Ct. 716, 133 L.Ed.2d 670 (1996).

Further we find that even if the other crimes evidence had been inadmissible, the admission of such evidence would have been harmless error. See LSA-C.Cr.P. art. 921. The erroneous admission of other crimes evidence is a trial error subject to harmless-error analysis on appeal. State v. Odenbaugh, 2010-0268 (La. 12/6/11), 82 So. 3d 215, 251, cert. denied, 568 U.S. 829, 133 S. Ct. 410, 184 L. Ed. 2d 51 (2012); State v. Johnson, 94-1379 (La. 11/27/95), 664 So. 2d 94, 102. The test for determining whether an error is harmless is whether the verdict actually rendered in this case "was surely unattributable to the error." Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S. Ct. 2078, 2081, 124 L. Ed. 2d 182 (1993); Odenbaugh, 82 So. 3d at 251; Johnson, 664 So. 2d at 100. The evidence at trial clearly established that the defendant, with full awareness of Breah's restraining order against him, entered the apartment without Breah's permission, struck her

several times and choked her. Moreover, in a bench trial, unlike a jury trial, the trial judge is well versed in the rules of evidence and is, therefore, trained to give the proper weight to evidence. See State v. Herrin, 562 So. 2d 1, 7 (La. App. 1st Cir.), writ denied, 565 So. 2d 942 (La. 1990). Any possibility that the trial court was prejudiced against the defendant by the other crimes evidence would be so remote as to render the verdicts surely unattributable to such evidence. See State v. Parker, 2016-1016 (La. App. 1st Cir. 2/17/17), 2017 WL 658256, *11 (unpublished), writ denied, 2017-0509 (La. 12/15/17), 231 So. 3d 637, cert. denied, __ U.S. __, 138 S. Ct. 2575, 201 L.Ed.2d 297 (2018). See also LSA-C.Cr.P. art. 921; Sullivan, 508 U.S. at 279, 113 S. Ct. at 2081.

These assignments of error are without merit.

### ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant argues the appellate record is incomplete as to the trial court's ruling on the admissibility of the other crimes evidence.

Article I, § 19 of the Louisiana Constitution guarantees defendants a right of appeal based upon a complete record of all the evidence upon which the judgment is based. Material omissions from the transcript of the proceedings at trial bearing on the merits of an appeal require reversal. State v. Frank, 99-0553 (La. 1/17/01), 803 So. 2d 1, 20. On the other hand, inconsequential omissions or slight inaccuracies do not require reversal. Frank, 803 So. 2d at 21. A defendant is not entitled to relief because of an incomplete record absent a showing of prejudice based on the missing portions of the transcripts. Frank, 803 So. 2d at 21.

The defendant points out in brief (and as already noted above) that defense counsel made the following objection: "Judge, at this time I have to object. The reason I'm objecting, we've kind of covered the issue about the 404, and I've allowed her to kind of get into it a little bit. But, I mean, to me, she's kind of

9

drawing it out." According to the defendant, this language suggests that some discussion or argument occurred prior to the trial court's ruling on the LSA-C.E. art. 404(B) evidence. Thus, the defendant contends, either the trial court did not hold a Prieur hearing or there was "some kind of hearing" or discussion about the other crimes evidence that does not appear in the record, in which case, the record on appeal is incomplete. Defendant argues that the Prieur hearing omission from the appellate record is a material omission requiring reversal, since the other crimes evidence comprised a large portion of the State's evidence against him.

As discussed in the previous assignments of error, the evidence against the defendant regarding the instant crimes was considerable and, even had the other crimes evidence been improperly admitted, such error would have been harmless. As also discussed above, there is no record of a pretrial hearing on the other crimes evidence; however despite the apparent Prieur violation, the defendant failed to show any prejudice. See Pardon, 703 So. 2d at 57.

At the beginning of trial on February 11, 2016, the trial court ruled on the admissibility of the other crimes evidence ("From reading the motions, I'm going to allow the evidence to come in.") but provided nothing more. The defendant filed a motion to supplement the record on appeal on this issue, wherein this court issued the following order to the trial court:

> This matter presently pending before this court, the record on appeal is missing the following necessary transcript: the transcript of February 11, 2016 specifically relating to any hearing, argument, and ruling on the State's Motion for Admission of Evidence in Accordance with C.E. Article 404(B), if any.

> Accordingly, **IT IS ORDERED** that the Clerk of Court of the 19th Judicial District Court, Parish of East Baton Rouge, supplement the record on appeal with the transcript of February 11, 2016 specifically relating to any hearing, argument, and ruling on the State's Motion for Admission of Evidence in Accordance with C.E. Article 404(B), or cause the record to be supplemented with a certificate that the transcript cannot be prepared on or before March 1, 2019....

The trial court replied to this court with the following order:

> On February 19, 2019 the Court of Appeal, First Circuit ordered this court to supplement the record on appeal with the transcript of February 11, 2016 specifically relating to any hearing, argument, and ruling on the State's Motion for Admission of Evidence in Accordance with C.E. Article 404(B). The transcript from the trial on that date has already been submitted in this matter. There were no other hearings and therefore, no other transcripts to provide in this matter. In the transcript already on record, this court states, "All right. From reading the Motions, I'm going to allow the evidence to come in." (See copy of transcript, page 3, attached). This is the only reference to the State's Motion in the entire transcript. Therefore, the record cannot be supplemented.

Based on the foregoing, the appellate record before us is not incomplete. Moreover, as in the instant case, an incomplete record may be adequate for full appellate review. Also, there exists a presumption of regularity in judicial proceedings. The defendant herein has not shown any prejudice from any allegedly missing portions from the record. See State v. Hawkins, 96-0766 (La. 1/14/97), 688 So. 2d 473, 480.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 4

In his fourth assignment of error, the defendant argues the evidence was insufficient to support the conviction for unauthorized entry of an inhabited dwelling. The defendant does not challenge the domestic abuse battery conviction.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See LSA-C.Cr.P. art. 821(B); State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So. 2d 654, 660; State v. Mussall, 523 So. 2d 1305, 1308-09

11

(La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.

Louisiana Revised Statutes 14:62.3(A) provides: "Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or in part as a home or place of abode by a person." An unauthorized entry is an entry without consent, express or implied. State v. Ortiz, 96-1609 (La. 10/21/97), 701 So. 2d 922, 931, cert. denied, 524 U.S. 943, 118 S. Ct. 2352, 141 L.Ed.2d 722 (1998). Unauthorized entry of an inhabited dwelling requires general intent. Lattin, 219 So. 3d at 517. General intent requires a showing that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. LSA-R.S. 14:10(2). In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Howard, 94-0023 (La. 6/3/94), 638 So. 2d 216, 217 (per curiam).

In his brief, the defendant argues he cannot be guilty of unauthorized entry of an inhabited dwelling because the home at issue was his own home, and he was in the process of moving out of it. The defendant notes he had belongings at the apartment, including clothes, two televisions, and a washing machine, and as such, had a proprietary interest in the home. There was no evidence, the defendant suggests, that he forced his way in, or that Breah denied him entry or asked him to leave.

There is no forced entry requirement in unauthorized entry of an inhabited dwelling. When the defendant rang the doorbell, Breah asked a few times who it was, but the defendant did not answer. Breah reached to open the door because she thought it was a friend or neighbor. Before she opened the door, the defendant walked in. Breah is four feet ten inches tall and explained at trial that she was too short to reach the door's peep hole. Breah indicated that when she saw the defendant, she did not say anything because she was in "shock." The defendant had been in jail for previously attacking Breah; she thought the defendant was still in jail when the door opened, and she had no idea the defendant was being released that day. When the defendant walked into the apartment, he locked the door. As Breah backed away, the defendant told her that today she was going to die. Breah made clear at trial that she had not given the defendant permission to enter the apartment. The following exchange with Breah on redirect examination reveals her state of mind when the defendant showed up at the apartment:

Q. How did you feel when you -- when he opened that door and you saw Mr. Piper?

A. My heart was in my stomach. I never -- I knew I was going to see him again, but I didn't expect it to be like this and how it happened. I was terrified. I was shaking. I was just trying to think of my next move. I was scared. I was trying –

Q. And when he walked in and made that statement to you, how did you feel?

A. Petrified.

Q. Did you believe him when he said you were going to die?

A. Yes.

Q. Why?

A. Because of our history and I knew that he was going to be mad, and he felt like I took everything from him because of a previous conversation. I already know that's how he felt, I ruined his life.

13

That the defendant had some of his belongings at the apartment is of no moment. Breah had a protective order against the defendant that was in effect from April 24, 2014 to April 24, 2015. The defendant signed the protective order on April 28, 2014, acknowledging that he understood, accepted, and agreed to comply with all conditions and orders therein. The order provided that the defendant not contact Breah or go within 100 yards of her. It further ordered the defendant not to go to Breah's residence or household. The defendant admitted at trial that he knew he had the protective order against him, but went to the apartment anyway. The defendant also knew that Breah married another man, or at least was seeing another man, while the defendant was in jail. Corporal Edward Nicholson, with the East Baton Rouge Parish Sheriff's Office, testified that he interviewed the defendant, who told the corporal that he knew he had a protective order against him, and that he knew he was not supposed to be at the apartment. Corporal Nicholson also indicated that he believed Breah was the only person on the apartment lease at the time of the instant offense. In any event, it is clear that when the defendant went to the apartment, he was aware that he no longer lived there and was not allowed to be there.

In State v. Butler, 2006-645 (La. App. 5th Cir. 12/27/06), 948 So. 2d 296, 298-300, the defendant argued the evidence was insufficient to support a conviction for unauthorized entry of an inhabited dwelling. The victim had filed a restraining order against the defendant, who was the father of the victim's young daughter. The victim testified she and the defendant were planning to marry the following summer. The defendant argued his entry into the apartment was authorized because the victim did not ask him to leave immediately. The fifth circuit found the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant intentionally entered the victim's home without authorization. According to the court, while the victim

14

acknowledged she did not immediately ask the defendant to leave, she testified she did not authorize the defendant's entry into her home. In addition, there was a restraining order against the defendant at the time of his entry into the victim's apartment. See and compare State v. Spain, 99-1956 (La. App. 4th Cir. 3/15/00), 757 So. 2d 879, 882-84. (The relevant question is not whether defendant could generally enter the victim's residence, but whether this particular entry was authorized).

Herein, based on the evidence, a trier of fact could have reasonably concluded that the defendant was not invited into the apartment by Breah, and that with a restraining order against him, he had no right to be there or around Breah. While the defendant testified that he was invited into the apartment and that he never choked Breah, the trial court determined otherwise and accepted the veracity of Breah's version of the events. As the trier of fact, the trial court was free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Vaughn, 2018-0344 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1048, 1058; State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So. 2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La. 10/17/00), 772 So. 2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. Vaughn, 259 So. 3d at 1058; State v. Quinn, 479 So. 2d 592, 596 (La. App. 1st Cir. 1985).

15

When a case involves circumstantial evidence, and the trial court reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Captville, 448 So. 2d 676, 680 (La. 1984). In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 2003-1980 (La. 4/1/05), 898 So. 2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S. Ct. 182, 163 L.Ed.2d 187 (2005). The trial court's finding of guilt reflected the reasonable conclusion that, based on the testimonial and physical evidence, the defendant committed an unauthorized entry of an inhabited dwelling. In finding the defendant guilty, the trial court rejected the defendant's theory of innocence. See Captville, 448 So. 2d at 680.

After a thorough review of the record, we find the evidence supports the trial court's findings of guilt. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of unauthorized entry of an inhabited dwelling, and the uncontested domestic abuse battery (by strangulation). See State v. Calloway, 2007-2306 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

This assignment of error also lacks merit.

## ASSIGNMENT OF ERROR NO. 5

In his fifth assignment of error, the defendant argues that the trial court erred in adjudicating him a habitual offender. Specifically, the defendant contends the habitual offender sentencing was in error because the trial court failed to inform the defendant of his rights after the defendant admitted to the allegations in the habitual offender bill of information.

16

This assignment of error has merit. If, at any time, either after conviction or sentence, it shall appear that a person convicted of a felony has previously been convicted of a felony, the district attorney of the parish in which the subsequent conviction was had may file an information accusing the person of a previous conviction. See LSA-R.S. 15:529.1(D)(1)(a). After a habitual offender bill of information is filed, the court in which the subsequent conviction was had shall cause the person to be brought before it and shall inform him of the allegation contained in the information and of his right to be tried as to the truth thereof according to law, and shall also require the offender to say whether the allegations are true. LSA-R.S. 15:529.1(D)(1)(a). The statute further implicitly provides that the court should advise the defendant of his right to remain silent. State v. Griffin, 525 So. 2d 705, 706 (La. App. 1st Cir. 1988).

At the sentencing hearing, the following exchange between the trial court and the defendant took place:

> Q. Mr. Piper, your lawyer says that you want to go ahead and admit that you're a third-felony offender rather than have the hearing; is that correct, sir?
>
> A. Yes, sir.

The trial court found the defendant to be a third-felony habitual offender, then sentenced him on each count. Generally, the failure of the trial court to advise a defendant of his right to a hearing and his right to remain silent is not considered reversible error where the State has offered competent evidence of the defendant's status as a habitual offender at a hearing. State v. Cousin, 2017-1135 (La. App. 1st Cir. 12/21/17), 240 So. 3d 954, 962, writ denied, 2018-0184 (La. 11/5/18), 255 So. 3d 1049. When the defendant's guilt, however, is proven by his own stipulation or admission without having been informed of his right to a hearing or his right to remain silent, by either the trial court or his attorney, there is reversible error. Cousin, 240 So. 3d at 962. The language of the Habitual Offender Law must be

17

strictly construed. In this regard, an implicit and integral aspect of the requirements of LSA-R.S. 15:529.1 is the court's duty to inform the defendant of his right to remain silent. State v. Gonsoulin, 2003-2473 (La. App. 1st Cir. 6/25/04), 886 So. 2d 499, 501 (en banc), writ denied, 2004-1917 (La. 12/10/04), 888 So. 2d 835.

In this case, while the defendant stipulated to his prior convictions (and presumedly his identity), the State offered no competent evidence of the defendant's status as a habitual offender at the hearing. The State, in fact, offered no evidence at all. Accordingly, there was no proof introduced of the defendant's identity as to the alleged predicate offenses. Thus, on the record before us, we are constrained to find that the admission by the defendant without prior advisement of his right to remain silent, as well as the absence of any documentary proof by the State requires reversal of the habitual offender finding. See Cousin, 240 So. 3d 962. Cf. State v. Cook, 2011-2223 (La. 3/23/12), 82 So. 3d 1239 (per curiam) (where the Louisiana Supreme Court found that the trial court adjudicated the defendant as a habitual offender on the basis of not only his stipulation, but also the documentary evidence introduced by the State at the hearing).

Accordingly, for the foregoing reasons, the defendant's habitual offender adjudication and sentences are vacated. The matter is remanded to the trial court for resentencing.[2]

**CONVICTIONS AFFIRMED; HABITUAL OFFENDER ADJUDICATION AND SENTENCES VACATED; REMANDED FOR RESENTENCING.**

---

[2]The defendant is not protected by principles of double jeopardy from being tried again under the Habitual Offender Law. State v. Young, 99-1310 (La. App. 1st Cir. 4/17/00), 769 So. 2d 12, 14.