McClendon, J.
*1053 Defendant, Kyran Javon Vaughn, was charged by an amended bill of information with one count of armed robbery with a firearm, a violation of Louisiana Revised Statutes 14:64 and 14:64.3A (count I)[1] , and one count of obstruction of justice, a violation of LSA-R.S. 14:130.1A(1) (count II). At his arraignment, defendant entered a plea of not guilty on both counts, but following a jury trial, was found guilty of the responsive verdict of first degree robbery, a violation of LSA-R.S. 14:64.1, on count I, and guilty as charged on count II. Motions for a new trial and post-verdict judgment of acquittal were filed by defendant, but denied by the district court.
A habitual offender bill of information was filed by the State, alleging defendant's status as a second-felony habitual offender. Following a hearing, defendant was adjudicated a second-felony habitual offender on count I.[2] The trial court then sentenced defendant to imprisonment at hard labor for twenty years on count I, and imprisonment at hard labor for ten years on count II, with the sentences ordered to run concurrently.[3] A motion to reconsider sentence was filed by defendant, but subsequently denied by the trial court. Defendant now appeals, assigning error to the trial court's failure to sever the charges, to the insufficiency of the evidence presented at trial, and to the excessiveness of his sentences. For the following reasons, we affirm defendant's convictions, habitual offender adjudications, and sentences.
FACTS
At approximately 1:00 a.m. on the morning of September 14, 2016, the victim, Jessie Oates returned to his mother's house in the Kingspoint area of Slidell, Louisiana, with forty to fifty pounds of shrimp following a long day working on a shrimp boat. As Oates needed some money, he called a few individuals in hopes of selling some of the shrimp. Oates then left his mother's *1054 home, pulling the container of shrimp in a wagon, and carrying a drawstring backpack containing an iPad and headphones. As he was walking to his first stop, Oates testified that a dark blue Grand Prix, with two black males inside, pulled up beside him. Oates testified he could not see the driver's face, but the passenger, wearing blue jeans, a grey t-shirt, and a white hockey mask, exited the vehicle, pointed a gun at Oates, and demanded he empty his pockets. Oates described the gun as a "long" and "big" rifle or shotgun and was confident it "wasn't like a pistol or anything." Oates testified the two individuals did not hurt him, but, because the gun was pointed at him, he was afraid. He turned over the drawstring backpack containing his iPad and headphones and began to run away but, as he was doing so, the driver of the vehicle asked for the iPad's passcode. Oates relayed the passcode, ran around the corner, waited for the vehicle to leave, and returned to the location for his shrimp. Upon returning to his father's house a few hours later, Oates described the incident, and his father called the police.
A few months later, Oates received a letter dated March 1, 2017, from "Ronaldo," "one of the dudes who is the charge for you being robbed in Kingspoint[.]" In one section of the letter, the writer, asked Oates to drop the charges against defendant, stated that defendant recently received $15,000.00 from a car accident, and indicated that he would give Oates "a few hundred" once the charges were dropped. Another section of the letter alleged that an individual named Rashad Price committed the robbery, but Oates testified he knew Price "very well" and was "sure" that Price was not one of the individuals who robbed him. Oates further testified he did not drop the charges, and did not accept any money in exchange for his testimony.
Deputy James Stelfox of the St. Tammany Parish Sheriff's Office responded to the robbery at approximately 3:45 a.m. Upon speaking with Oates, Deputy Stelfox did not observe him to be intoxicated or under the influence, and was told by Oates that a "light blue" Pontiac with two black male occupants approached and stopped him, pointed a "shotgun or a rifle" at him, and robbed him. Deputy Stelfox was also informed the passenger of the vehicle was wearing a white hockey mask. Deputy Stelfox's investigation was complete when, after searching the Automated License Plate Recognition system, a hit returned on a license plate registered to a light blue Pontiac, which was observed near the Kingspoint neighborhood around 1:00 a.m. earlier that morning.
Ronaldo Joseph, the co-defendant on count I, testified that on September 14, 2016, after completing his shift at Popeyes, he picked up defendant in his blue Pontiac car at approximately 11:00 p.m. Defendant, sitting in the front passenger seat, was wearing a blue shirt and a pair of shorts. After spending time with some friends, followed by a couple of trips to a local Time Saver gas station, the two eventually left. As Joseph was driving defendant back to his home, again with defendant in the front passenger seat, they noticed Oates carrying a "book bag and a wagon." Defendant instructed Joseph to turn around as he believed he knew Oates. Joseph pulled up beside Oates, and testified that when he did, defendant "hopped out the car with a mask and a gun and robbed the guy." Joseph described the gun as a brown, "sawed-off gun," and the mask as a white hockey mask. While Joseph testified he had not previously seen the gun or mask, he stated that defendant's shirt "was long enough to hide anything." As defendant exited the vehicle, he instructed Oates to "put [his] hands up and turn around, don't look at me or I'm going to shoot you."
*1055 Joseph testified that defendant took Oates' book sack which contained an iPad. After demanding and receiving the iPad's passcode, the two left Oates, and Joseph subsequently dropped defendant off at his home. Upon reaching the residence, defendant threatened Joseph not to tell anyone what happened or "he was going to shoot up [his] mom's house."
Joseph testified that he did not write the letter that Oates received regarding defendant offering to pay him money in exchange for not testifying and that he neither offered nor paid Oates any money. Furthermore, Joseph testified that an affidavit, which was not notarized or signed by any witnesses, but was allegedly signed and sent by him to the St. Tammany Parish District Attorney's Office, in which he claims he lied about being with defendant on the night of the robbery, contained a false signature. Joseph affirmatively testified that defendant was with him on the night of September 14, 2016.
Detective Jared Lunsford of the St. Tammany Parish Sheriff's Office was assigned to the case and visited the Time Saver gas station a few days later to determine the availability of additional evidence. Detective Lunsford spoke with the store clerk of the Time Saver gas station and reviewed the surveillance footage captured from the store's security cameras. As Detective Lunsford and the store clerk watched the footage, the clerk visually identified defendant and provided Detective Lunsford a copy of defendant's driver's license. The security footage revealed that, at approximately 1:40 a.m., Oates was walking down the street pulling a wagon when defendant and Joseph returned to the Time Saver gas station. The video also showed the light blue Pontiac stopping near Oates and the front passenger of the Pontiac, who had on a white hockey mask, exiting the vehicle and approaching Oates who then threw "his arms up in the air ... [backed] away ... and then [turned] and [ran] away." Detective Lunsford stated that defendant appeared to be wearing a "blue polo-type shirt, short sleeves, with blue jeans and black and white shoes and a hat with something written on it." Also as a part of his investigation, Detective Lunsford questioned Joseph, who admitted to being the driver of the blue Pontiac, identified his passenger as defendant, and corroborated that defendant wore a "Jason" style mask, used a firearm in the robbery, pointed it at Oates, and took Oates' iPad. Detective Lunsford arrested Joseph and, after locating and searching defendant's residence, arrested him as well.
Nicole Joseph, Ronaldo Joseph's mother, testified that she received a letter from defendant postmarked January 17, 2017, with the return address on the envelope reading "Kyran Vaughn, St. Tammany Parish Jail." The letter begins with "[t]his is Kyran the codefendant in your son's case" and proceeds to include the following pertinent statements: (1) "Ronaldo doesn't understand that my people ... went and talked to the victim who is a heroin addict and he doesn't even want to [pursue] the charges anymore[.] [H]e's not coming to trial and me and Ronaldo will walk away with no time because if the victim doesn't come to trial the case gets dismissed. So please Ms[.] Joseph [I'm] asking you from the heart can you please talk to your son and let him know we got the case beat"; (2) "I'm asking can you please talk to him about not testifying"; (3) "also I want [to] let you know that my brother ... gave the victim [$2,000.00] not to come to court even though he wasn't going to come anyway and my family is going to let him stay at my house when [it's] time for him to come to trial"; (4) "Also we can actually both go home next month if your son takes his recorded statement back because without his statement they don't have probable cause to have us in here[.] I'm going to *1056 send the Affidavit with this letter [and] you can send it to him tell him to put that he was [lying] and he felt pressured by detectives to give a statement and we had nothing to do with a robbery .... [It's] called recanting your statement"; and (5) "I know what I'm talking about[.] My auntie is a lawyer in Chicago[.] I know the law. Tell him to do that and we can both be hom[e] before Mardi Gras[.]"
Robert Foley, who was qualified and tendered at trial as a forensic document examiner handwriting expert, reviewed the letter received by Mrs. Joseph and the affidavit and letter purportedly authored by Ronaldo Joseph, as well as handwriting exemplars from both Joseph and the defendant. After conducting his analysis, Foley opined that there were "indications" that defendant wrote the letter to Mrs. Joseph and the alleged Ronaldo Joseph affidavit and letter, and he was confident that the letter to Mrs. Joseph and the letter to Oates were authored by the same person. Foley also compared the handwriting of Ronaldo Joseph to the signature on his alleged affidavit and concluded it was not his signature.
ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant argues the State did not prove beyond a reasonable doubt that he committed the crime of first degree robbery as "[t]he descriptions of [defendant] are wildly different between the testimony of Ronaldo Joseph and Jesse Oates." Further, defendant contends the State did not prove beyond a reasonable doubt that he committed the crime of obstruction of justice, arguing the State "did not definitively prove that [he] authored any of the items presented to the court and the jury[,]" and that "[n]o individuals were paid any funds and everyone testified without threats." Therefore, defendant avers his convictions should be reversed.
When issues are raised on appeal, both as to sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing the sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 43, 101 S.Ct. 970, 972, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of trial errors as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) ; State v. Hearold, 603 So.2d 731, 734 (La. 1992). Accordingly, we proceed first to determine whether the entirety of the evidence was sufficient to support defendant's convictions.
*1057 A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend, XIV; LSA-Const. art. I, § 2, The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and defendant's identity as the perpetrator of that crime, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) ; State v. Patton, 10-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209, 1224. In conducting this review, we must also be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438 ; State v. Millien, 02-1006 (La.App. 1 Cir. 2/14/03), 845 So.2d 506, 508-09.
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 730 So.2d 485, 487, writs denied, 99-0802 (La. 10/29/99), 748 So.2d 1157, and 00-0895 (La. 11/17/00), 773 So.2d 732.
First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. LSA-R.S. 14:64.1A. The first degree robbery statute has objective and subjective components. The State must prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. The statute excludes unreasonable panic reactions by the victim, but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery. Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery. State v. Caples, 05-2517 (La.App. 1 Cir. 6/9/06), 938 So.2d 147, 151, writ denied, 06-2466 (La. 4/27/07), 955 So.2d 684.
Additionally, the crime of obstruction of justice is defined, in part, as "[i]nducing or persuading or attempting to induce or persuade any person to do any of the following ... [t]estify falsely or, without right or privilege to do so, to withhold any testimony" when the defendant has "knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding." LSA-R.S. 14:130.1A(4)(a). The statute does not require that the criminal proceeding actually be affected; the perpetrator just must know and understand that the act may affect the proceeding. Further, the criminal proceeding need not already be underway; it need only be a "potential," "future" proceeding. See State v. Jones, 07-1052 (La. 6/3/08), 983 So.2d 95, 101.
In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is *1058 sufficient to support a factual conclusion. State v. Higgins, 03-1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342 (La, 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985).
Any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of first degree robbery and defendant's identity as the perpetrator of that offense. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1 Cir.), writ denied, 514 So.2d 126 (La. 1987). No such hypothesis exists in the instant case. Oates testified that defendant pointed a gun at him, he surrendered his backpack containing an iPad and headphones to defendant, and he was scared. Further, Ronaldo Joseph, as the driver of the blue Pontiac that evening, likewise testified that defendant pointed a gun at Oates and took his iPad. Lastly, as discovered through Detective Lunsford's investigation, the Time Saver store clerk identified defendant as the passenger of the blue Pontiac on the night of the robbery.
Further, any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of obstruction of justice and defendant's identity as the perpetrator of that offense. As noted above, when a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant, is guilty unless there is another hypothesis that raises a reasonable doubt. Id. No such hypothesis exists in the instant case. The letter received by Oates offered him money if he would not testify at trial, and the letter received by Mrs. Joseph tried to convince her to persuade Ronaldo Joseph not to testify or to otherwise recant his testimony and to sign the affidavit purportedly written by Ronaldo Joseph that said he was lying regarding who committed the robbery. Robert Foley, the expert forensic document examiner testified that these were all written by the same individual, with indications that defendant was the author.
After reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. State v. Ordodi, 06-0207 (La. 11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting *1059 its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant argues that the trial court erred in denying his motion to sever counts I & II, and asserts that the State "was able to paint a picture which suggested that [he] was guilty by attempting to prove his identity in the later charged [o]bstruction of [ju]stice count." Further, defendant claims the offenses were so dissimilar as to not warrant joinder, and concludes that such joinder severely prejudiced him at trial.
Louisiana Code of Criminal Procedure article 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
However, even when multiple offenses may be joined under Article 493, Article 495.1 additionally provides that:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of Information or by such joinder for trial together, the court may order separate; trials, grant a severance of offenses, or provide whatever other relief justice requires.
A defendant in any case bears a heavy burden of proof when alleging prejudicial joinder of offenses as grounds for a motion to sever; factual, rather than conclusory, allegations are required. In ruling on such a motion, the trial court must weigh the possibility of prejudice to the defendant against the important considerations of economical and expedient use of judicial resources. A motion to sever is addressed to the sound discretion of the trial court, and the court's ruling should not be disturbed on appeal absent a clear showing of prejudice. State v. Morris, 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 913-14, writ denied, 00-3293 (La. 10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
In determining whether joinder will be prejudicial, the court should consider whether: (1) the jury would be confused by the various counts; (2) the jury would be able to segregate the various charges and evidence; (3) the defendant would be confounded in presenting his various defenses; (4) the crimes charged would be used by the jury to infer a criminal disposition; and (5) especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Deruise, 98-0541 (La. 4/3/01), 802 So.2d 1224, 1232, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001). However, the fact that evidence of one of the charges would not be admissible in a separate trial on the joined offense does not per se prevent the joinder and single trial of both crimes if the joinder is otherwise permissible. Finally, there is no prejudicial effect from the joinder of two offenses when the evidence of each is relatively simple and distinct, so that the jury can easily keep the evidence of each offense *1060 separate in its deliberations. Id . ;see also State v. Murphy, 16-0901 (La.App. 1 Cir. 10/28/16), 206 So.3d 219, 226-27.
In the present case, defendant was charged with one count of armed robbery with a firearm and one count of obstruction of justice. As the armed robbery with a firearm charge carries a mandatory sentence of imprisonment at hard labor, it shall be tried by a jury of twelve, ten of who must concur to render a verdict. See LSA-R.S. 14:64 and 14:64.3 ; LSA-C.Cr.P, art. 782A. Further, for the obstruction of justice charge, in addition to the imposition of a fine, defendant was subject to a potential sentence of imprisonment at hard labor. Thus, this charge likewise requires a jury comprised of twelve members, ten of whom must concur to render a verdict. See LSA-R.S. 14:130.1B(2); LSA-G.Cr.P. art. 782A. Defendant was tried by a twelve member jury, ten of whom concurred to render the verdicts in the present case. Moreover, the Louisiana Supreme Court has recognized that joinder is not unfairly prejudicial if the facts of each offense would be admissible at the trial of the other. See State v. Washington, 386 So.2d 1368, 1372 (La. 1980). Thus, the offenses were properly joined under LSA-C.Cr.P. art. 493.
In denying the motion to sever, the trial court noted the "obstruction charge is somewhat part and parcel to the armed robbery[,]" and "[e]ven though it is a separate offense, I think it's intertwined with [t]he State's case that is going to be presented. I see no need - I think [t]he [j]ury is quite capable of separating the two and I see no need for us to sever these and cause us to have two separate trials on this." A review of the record reveals that the evidence against defendant on each count was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and evidence. Additionally, there is nothing in the record to suggest that the State joined the offenses to show defendant's criminal propensity or that the jury became hostile because of the joinder. In fact, on count I, the jury rendered the responsive verdict of first degree robbery, rather than finding the defendant guilty as charged. Moreover, the State was able to independently prove defendant's identity through Oates' description, Ronaldo Joseph's testimony, and the Time Saver store clerk who provided Detective Lunsford a copy of defendant's driver's license. As we find defendant has not set forth a sufficient factual basis for his allegation that he was prejudiced by the joinder of the charges, the trial court did not abuse its discretion in denying the motion to sever. See Murphy, 206 So.3d at 227.
Assignment of error number one lacks merit.
ASSIGNMENT OF ERROR NO. 3
In his third assignment of error, defendant argues his sentences are unconstitutionally excessive and are, in light of only having one prior felony conviction and along with the recent legislative amendments to LSA-R.S. 15:529.1, governing sentences for second and subsequent offenses, out of proportion to the severity of his crimes.
The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment *1061 are considered in light of the harm done to society, it shocks the sense of justice. State v. Andrews, 94-0842 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1 Cir. 1988). Louisiana Code of Criminal Procedure art. 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. State v. Brown, 02-2231 (La.App. 1 Cir. 5/9/03), 849 So.2d 566, 569.
The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). The trial court should review the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La. 1981). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (per curiam).
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial court judge were to find that the punishment mandated by LSA-R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, 676-77, the supreme court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. While both Dorthey and Johnson involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in Dorthey are not restricted in application to the penalties provided by LSA-R.S. 15:529.1. See State v. Fobbs, 99-1024 (La. 9/24/99), 744 So.2d 1274 (per curiam); State v. Collins, 09-1617 (La.App. 1 Cir. 2/12/10), 35 So.3d 1103, 1108, writ denied, 10-0606 (La. 10/8/10), 46 So.3d 1265.
Mandatory sentences have been repeatedly upheld as constitutional and consistent with the federal and state constitutional provisions prohibiting cruel, unusual, or excessive punishment. See State v. Jones, 46,758-59 (La.App. 2 Cir. 12/14/11), 81 So.3d 236, 249, writ denied, 12-0147 (La. 5/4/12), 88 So.3d 462. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 709 So.2d at 676.
Herein, defendant was adjudicated and sentenced as a second-felony habitual offender *1062 on count I under LSA-R.S. 15:529.1A(1) (prior to amendment by 2017 La. Acts Nos. 257, § 1 and 282, § 1). The applicable version of that statutory provision states that "[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction." As first degree robbery carries a penalty of imprisonment at hard labor for not less than three years and not more than forty years without benefit of parole, probation, or suspension of sentence, defendant's enhanced sentencing range as a second-felony habitual offender was imprisonment at hard labor for twenty to eighty years without benefit of parole, probation, or suspension of sentence. See LSA-R.S. 14:64.1B. Regarding the obstruction of justice conviction, LSA-R.S. 14:130.1B(2) states that "[w]hen the obstruction of justice involves a criminal proceeding in which a sentence of imprisonment necessarily at hard labor for any period less than a life sentence may be imposed, the offender may be fined not more than fifty thousand dollars, or imprisoned for not more than twenty years at hard labor, or both." Therefore, in accordance with LSA-R.S. 15:529.1A(1), defendant's statutory minimum sentence on count I of imprisonment at hard labor for twenty years without benefit of probation, parole, or suspension of sentence, and in accordance with LSA-R.S. 14:130.1B(2), sentence on count II of imprisonment at hard labor for ten years, were proper.
While the penalty for a second-felony habitual offender was revised[4] after defendant's offenses, it is well-settled that "[a] defendant is not convicted of being a habitual offender. Rather, a defendant is adjudicated as a habitual offender as a result of prior felony convictions. The sentence to be imposed following a habitual offender adjudication is simply an enhanced penalty for the underlying conviction." As such, the Louisiana Supreme Court held that a defendant "should be sentenced in accord with the version of La. R.S. 15:529.1 in effect at the time of the commission of the charged offense." State v. Parker, 03-0924 (La, 4/14/04), 871 So.2d 317, 325-26. Moreover, Act 542 of the 2018 Regular Legislative Session adds a new Subsection to LSA-R.S. 15:529.1, which reads, "(K)(I) Except as provided in Paragraph (2) of this Subsection, notwithstanding any provision of law to the contrary, the court shall apply the provisions of this Section that were in effect on the date that the defendant's instant offense was committed." Therefore, as defendant committed the instant offenses on September 14, 2016, the trial court correctly sentenced defendant under the version of LSA-R.S. 15:529.1 prior to the 2017 amendments. See State v. Johnson, 17-1347 (La.App. 1 Cir. 3/13/18), 2018 WL 1312575 (unpublished); State v. Bowie, 17-1762 (La.App. 1 Cir. 6/1/18), 2018 WL 2453480 (unpublished).
At the sentencing hearing, the trial court noted it considered the facts and reviewed the sentencing guidelines provided in Article 894.1, specifically that defendant committed a crime of violence with a dangerous weapon. Further, in light of his *1063 predicate felony conviction of simple kidnapping, the trial court stated that defendant "apparently does not have a great concern about the safety of others. So, to impose a lesser sentence would deprecate the seriousness of this offense." See LSA-C.Cr.P. art. 894.1A(3), B(6), and B(10).
The record before us clearly establishes an adequate factual basis for the sentences imposed. Defendant has not proven by dear and convincing evidence that he is exceptional such that the mandatory minimum sentences are not meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 709 So.2d at 676. Accordingly, no downward departure from the presumptively constitutional mandatory minimum sentences was warranted. The sentences imposed are not grossly disproportionate to the severity of the offenses and, therefore, are not unconstitutionally excessive.
Assignment of error number three lacks merit.
CONCLUSION
For the above reasons, we affirm defendant's convictions, habitual offender adjudications, and sentences.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATIONS, AND SENTENCES AFFIRMED.

Co-defendant Ronaldo Ray Joseph was also charged by the same bill of information with one count of armed robbery with a firearm, but plead guilty to accessory after the fact of theft.

Predicate # 1 was set forth as defendant's July 10, 2015 conviction, under the 22nd Judicial District Court, Parish of St. Tammany, Docket No. 559231, to one count of simple kidnapping.

When imposing the enhanced sentence on count I, the trial judge did not state it would be served without the benefit of probation or suspension of sentence as required by LSA-R.S. 15:529.1G. Additionally, we note that while LSA-R.S. 15:529.1G does not restrict parole eligibility, the conditions imposed on the sentence are those called for the referenced statute. See State v. Bruins , 407 So.2d 685, 687 (La. 1981). As both LSA-R.S. 14:64B and 14:64.3A require that the period of imprisonment imposed under these statutes be served without benefit of parole, under Bruins , defendant's enhanced sentence for his conviction of armed robbery while using, a firearm is to be served without benefit of parole. Therefore, defendant's probation, parole, and suspension of sentence restrictions are self-activated under LSA-R.S. 15:301.1A. See State v. Williams , 00-1725 (La. 11/28/01), 800 So.2d 790, 799.

Effective November 1, 2017, and in accordance with 2017 La. Acts Nos. 257, § 1 and 282, § 1, LSA-R.S. 15:529.1A(1) now provides that "[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-third the longest term and not more than twice the longest term prescribed for a first conviction."