STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 KA 1206

STATE OF LOUISIANA

VERSUS

DANIEL TUCKER HAMILTON

**Judgment Rendered:** **FEB 2 1 2020**

\* \* \* \* \* \*

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 576714
Honorable Alan A. Zaunbrecher, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Holli Herrle-Castillo
Marrero, Louisiana

Counsel for Defendant/Appellant
Daniel Tucker Hamilton

\* \* \* \* \* \*

**BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS, [1]JJ.**

---

[1]    The Honorable William J. Burris, retired, is serving as judge *pro tempore* by special
appointment of the Louisiana Supreme Court.

**GUIDRY, J.**

The defendant, Daniel Tucker Hamilton, was charged by grand jury indictment with second degree murder, a violation of La. R.S. 14:30.1 (count 1); and two counts of solicitation for murder, violations of La. R.S. 14:28.1 (counts 2 and 3). The defendant pled not guilty and, following a jury trial, was found guilty as charged on all counts. For the second degree murder conviction, the defendant was sentenced to life imprisonment. Because the defendant was under the age of eighteen years at the time of the offense, the sentence was imposed with the benefit of parole eligibility pursuant to La. R.S. 15:574.4(G). For each solicitation for murder conviction, the defendant was sentenced to twenty years imprisonment at hard labor. The trial court ordered the count 2 sentence to run consecutive to the count 1 sentence, and the count 3 sentence to run concurrent with the count 1 sentence. The defendant now appeals, designating two assignments of error. We affirm the convictions. We affirm the sentences on counts 2 and 3. We amend the life sentence on count 1 by providing that it be served at hard labor and affirm as amended, and remand.

## FACTS

On Monday, March 7, 2016, James Kenneth Hamilton, known as "Kenny," did not show up for work at Campbell Roofing Materials Company. Patricia Hamilton, Kenny's sister-in-law, went to Kenny's house on Lenel Road in Covington and found Kenny dead in a recliner in the living room. Kenny had been shot six times in the head. Most of the gunshot wounds were at or near the top of the skull. Kenny lived with his brother, Russell, and the sixteen-year-old defendant, Kenny's stepson.

Dr. Michael Defatta, Chief Deputy Coroner for the St. Tammany Parish Coroner's Office, performed the autopsy on Kenny. Dr. Defatta testified at trial that he first examined Kenny's body at Kenny's house around noon on Monday,

March 7, 2016. According to Dr. Defatta, Kenny was killed at least 36 to 48 hours prior to the examination. Kenny was killed, therefore, on Friday or Saturday.

Six .22 caliber spent casings were found behind the chair Kenny was sitting in when he was shot. Kenny was a member of the Not-A-Hill Hunting Club, located outside of Abita Springs. According to Jeffrey King, the president of the club, Kenny often brought the defendant with him to the club. Kenny had his own camp in the club where he and the defendant spent time. The defendant had spent most of the weekend before Kenny was found at the hunting club with friends. During that time, the defendant had a Smith & Wesson .22 caliber semi-automatic pistol with a wood grip, which the police later seized from the camp. The gun and the six .22 caliber spent casings found at Kenny's house were sent to Patrick Lane for testing. Lane, an expert in firearm and tool mark examination and identification, testified at trial that the six spent casings had been fired from the defendant's .22 caliber pistol.

The defendant was arrested for the second degree murder of Kenny and posted bail. Prior to the trial, the defendant was riding with his girlfriend when they were pulled over for a traffic stop. A gun was found in the vehicle. The defendant told the police he had bought the gun for protection. In August of 2017, at a pretrial hearing, the State requested that the defendant's bond be revoked. The defendant, Ricky Hamilton (Kenny's brother), and Ricky's wife, Patricia Hamilton, were present at the hearing. Initially, the trial court did not revoke the defendant's bond. Ricky and Patricia addressed the trial court and expressed their concern and dissatisfaction with the trial court's ruling. The trial court reconsidered its previous ruling, revoked the defendant's bond, and remanded the defendant to the sheriff's office.

On September 1 or 2 of 2017, while the defendant was in a holding cell in the St. Tammany Parish Jail awaiting his trial, he began talking to forty-eight-year-

old Roger Brock, who was also in the holding cell. According to Brock, the defendant started talking about his case. When Brock told the defendant he did not look like he could do such a thing, the defendant told Brock he would be surprised what a person could do. According to Brock, the defendant then stated that Kenny was not his real father, but "his stepdad, and he said something to the effect of -- we started talking about weapons and he told me he didn't like a .22 but a .22 would get the job done." In a statement to the police and later at trial, Brock stated that the defendant had talked about Kenny receiving five shots to the back of the head. Brock added, "He said in so many words that it was more than just him and that everybody had got their story straight." Regarding why Kenny was killed, Brock remembered only that the defendant had told him it was about a disagreement. In his statement to the police, Brock said it was a disagreement "between the two that got him out of control and that he only -- the only thing that he wished he would have done differently was he wished he could have seen his face."

Brock indicated that the defendant was very upset with some family members, one of whom was Kenny's brother, who had gotten the defendant's bond revoked. According to Brock, the defendant then told him, regarding his relatives, that "maybe it would be better if they didn't show up period or if they was just taken care of." The defendant asked Brock if he would handle it, and Brock told the defendant he did not have a gun. The defendant, according to Brock, told him he could call his girlfriend and get the weapon and the money. The defendant called his girlfriend from the holding cell, and Brock heard the defendant refer to the gun as a paintball gun. The defendant told Brock that the gun would be a .40 caliber. The following exchange between Brock and the prosecutor then took place:

Q. And so did he offer to pay you to do anything?
A. Yes, he did.

Q. Okay. And what was your understanding of that proposition, what he was asking you to do?
A. Frankly, I was scared, because of the fact that I didn't want to be-- really I didn't think it was going to progress to that point.
Q. Uh-huh.
A. I didn't want any part of it. So when he was talking about the money issue, he threw a number out there, I think he said something like 1,500 and I told him no, something like 5 grand, just something crazy just to try to get him off the conversation and it didn't work. So I got kind of--I got nervous. I got kind of nervous. You know, even though he's young I got nervous because I felt like it was something that I needed to tell someone.
Q. Okay. What was he asking you to do at that point, was it just scare them?
A. No.
Q. What was he asking you to do?
A. He was asking me to kill them.
Q. And that was the arrangement for this 1,500, 5,000, this conversation back and forth about money?
A. Yeah.

Shortly following this, Brock contacted a worker at the jail about his conversation with the defendant. Detective Lawrence Hudson, a member of the St. Tammany Parish Sheriff's Office and the lead detective on the defendant's murder case, went to the jail and obtained a statement from Brock. A superceding indictment was returned, charging the defendant with second degree murder and two counts of solicitation for murder.

The defendant did not testify at trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the trial court erred in denying his motion to sever offenses. Specifically, the defendant contends that the joinder of offenses resulted in undue prejudice, requiring reversal of his convictions.

The defendant filed a motion to quash and/or sever counts. At a pretrial hearing on this matter, defense counsel argued there were very different time frames involved since the solicitation for murder charges were based on a crime allegedly committed about one-and-one-half years after Kenny was murdered. Defense counsel further argued that, the only connection Ricky and Patricia

5

Hamilton had with the murder case was that they were family members of the defendant. They were not eyewitnesses to the murder and, as such, allowing evidence of the solicitation for murder charges at the defendant's murder trial would prejudice the jury and could result in an unjust conviction on the murder charge.

The State responded that with crimes such as these, there would always be a lapse of time between the charges. The State further contended that the fact that the Hamiltons were not eyewitnesses was irrelevant. Both witnesses, according to the State, were going to testify at trial and would provide key pieces of circumstantial evidence to the State's case. Further, the State suggested, it would be impossible to present either case without discussion of the other, mainly because the defendant not only asked the informant to kill the Hamiltons, but also confessed to the informant he killed Kenny.

The trial court denied the defendant's motion to sever offenses, finding that the cases were very similar and the offenses were sufficiently intertwined such that joinder was proper. Further, the trial court found that there would not be undue prejudice from the joinder and that there were no complex elements in either offense that would "result in any undue prejudice or frankly any prejudice at all."

The defendant argues in brief that he was prejudiced by joinder of the offenses. According to the defendant, adding the two solicitation for murder charges that occurred a year-and-a-half after the murder only "served to complicate the case and make it less clear than it otherwise would have been." The defendant further suggests that since the second degree murder charge was based on weak circumstantial evidence, charging the three crimes together would have made the jury hostile and caused the jury to infer a criminal disposition to convict.

Louisiana Code of Criminal Procedure article 493 states:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses

6

charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.

Louisiana Code of Criminal Procedure article 495.1 provides: "If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires."

At the time of the offenses, La. C.Cr. P. art. 782(A) provided in pertinent part:

> Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.

The punishment for the offenses the defendant was charged with is necessarily confinement at hard labor. See La. R.S. 14:28.1(B) & La. R.S. 14:30.1(B). Thus, joinder of the offenses would be proper under La. C.Cr. P. art. 493 and tried by a twelve-person jury.

As a general rule, evidence of criminal conduct that takes place in a series of events is admissible at the trial of one of the offenses. See La. C.E. art. 404(B); State v. Colomb, 98-2813, p. 3 (La. 10/1/99), 747 So. 2d 1074, 1075 (per curiam). Any time the State introduces evidence of other criminal activity by the accused, the possibility exists that the trier of fact will be affected to some degree by the evidence. Nevertheless, there is no absolute ban on the introduction of evidence of other unrelated crimes, including felony convictions; instead, statutory and jurisprudential guidelines establish the circumstances under which this evidence is admissible. See La. C.E. arts. 403 & 404(B); State v. Prieur, 277 So. 2d 126, 130 (La. 1973); State v. Morris, 99-3075, p. 5 (La. App. 1st Cir. 11/3/00), 770 So. 2d 908, 914, writ denied, 00-3293 (La. 10/12/01), 799 So. 2d 496, cert. denied, 535

7

U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).

In ruling on a motion for severance, the trial court should consider a variety of factors in determining whether or not prejudice may result from the joinder: whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and the evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition; and whether, considering the nature of the offenses, the charging of several crimes would make the jury hostile. A severance need not be granted if the prejudice can effectively be avoided by other safeguards. In many instances, the trial judge can mitigate any prejudice resulting from joinder of offenses by providing clear instructions to the jury. The State can further curtail any prejudice with an orderly presentation of evidence. A motion for severance is addressed to the sound discretion of the trial court, and its ruling should not be disturbed on appeal absent a showing of an abuse of discretion. A defendant in any case bears a heavy burden of proof when alleging prejudicial joinder of offenses as grounds for a motion to sever. Factual, rather than conclusory, allegations are required. State v. Friday, 10-2309, p. 21 (La. App. 1st Cir. 6/17/11), 73 So. 3d 913, 928-29, writ denied, 11-1456 (La. 4/20/12), 85 So. 3d 1258.

In State v. Vaughn, 18-0344 (La. App. 1st Cir. 9/24/18), 259 So. 3d 1048, rev'd in part on other grounds, 18-01750 (La. 11/25/19), 283 So. 3d 494, the defendant was charged with armed robbery and obstruction of justice, offenses that occurred about six months apart. The trial court denied the motion to sever, and this court found no abuse of discretion in that ruling, stating in pertinent part:

> In denying the motion to sever, the trial court noted the "obstruction charge is somewhat part and parcel to the armed robbery[,]" and "[e]ven though it is a separate offense, I think it's intertwined with [t]he State's case that is going to be presented. I see no need - I think [t]he [j]ury is quite capable of separating the two and I see no need for us to sever these and cause us to have two separate

8

trials on this." A review of the record reveals that the evidence against defendant on each count was not complex and was presented in an orderly fashion, allowing the jury to segregate the charges and evidence.

Id. at 12-13, 259 So. 3d at 1060.

In State v. Hugle, 11-1121, p. 1 (La. App. 4th Cir. 11/7/12), 104 So. 3d 598, 604, writ denied, 12-2721 (La. 6/14/13), 118 So. 3d 1079, the defendant was charged with second degree murder that occurred in July of 2008. In June of 2009, the defendant was arrested for conspiracy to commit first degree murder of a witness to the murder. Id. at 6, 104 So. 3d at 606. The offenses were joined. Id. at 1-2, 104 So. 3d at 604. The defendant argued that his offenses should have been severed because, while evidence of the murder might be admissible in the trial of the conspiracy, the converse was not true; that is, evidence of the conspiracy charge was not necessary to prove the murder charge. Id. at 14, 104 So. 3d at 610. The fourth circuit found the defendant was not prejudiced by joinder of the offenses. Id. at 17-19, 104 So. 3d at 612-13.

While Vaughn and Hugle are not directly on point in that the defendant's aunt and uncle (Ricky and Patricia Hamilton) were not eyewitnesses to Kenny's murder, they are instructive. The crimes, while intertwined, were separate and distinct, and arguably would have resulted in minimal juror confusion. Following closing arguments, the trial court instructed the jury to deliberate on each count separately and that finding the defendant guilty or not on any one count was not to affect the verdict on the other counts. See State v. Crochet, 05-0123, p. 8 (La. 6/23/06), 931 So. 2d 1083, 1088 (per curiam) (wherein the court found the defendant was not unduly prejudiced by the consolidation of the charges in light of the instructions given the jury by the trial court). Moreover, even if the counts had been severed, then in the defendant's solicitation for murder trial, the prosecutor would have been unable to address evidence of these crimes without addressing and discussing the underlying crime of second degree murder. See State v. Butler,

9

15-89, p. 8 (La. App. 5th Cir. 7/29/15), 171 So. 3d 1283, 1289, writ denied, 15-1608 (La. 10/10/16), 207 So. 3d 408.

The charges were properly joined. Because the evidence regarding each crime was easily distinguishable, the defendant did not establish that the evidence of the solicitation for murder charges was likely to confuse the jurors and cause them to be unable to segregate the charges and evidence. Despite the defendant's assertion in brief, the State introduced evidence of each crime in a clear and orderly fashion.

Based on the foregoing, we find the trial court did not abuse its discretion in denying the defendant's motion to sever. Accordingly, this assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues that his sentences are excessive. Specifically, the defendant contends the trial court erred in imposing consecutive sentences.

A thorough review of the record indicates the defendant did not make or file a written motion to reconsider sentence based on any specific ground following the trial court's imposition of the sentences. Under La. C.Cr.P. arts. 881.1(E) and 881.2(A)(1), the failure to make or file a motion to reconsider sentence shall preclude a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. See State v. Mims, 619 So. 2d 1059 (La. 1993) (per curiam). The defendant, therefore, is procedurally barred from having his assignment of error reviewed because of his failure to file a motion to reconsider sentence after being sentenced. See State v. Duncan, 94-1563, p. 2 (La. App. 1st Cir. 12/15/95), 667 So. 2d 1141, 1143 (en banc per curiam). See also State v. Leboeuf, 18-1777, p. 3 (La. App. 1st Cir. 8/2/19), 281 So. 3d 714, 715.

This assignment of error is without merit.

10

## SENTENCING ERROR

Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record, we have found a sentencing error.

For a conviction of second degree murder, the offender shall be imprisoned at hard labor for life without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B). According to the sentencing transcript, the trial court failed to provide that the life sentence was to be served at hard labor.[2] Louisiana Code of Criminal Procedure article 920(2) authorizes consideration of such an error on appeal. Further, La. C.Cr.P. art. 882(A) authorizes correction by the appellate court.[3] We find that correction of this illegally lenient sentence does not involve the exercise of sentencing discretion and, as such, there is no reason why this court should not simply amend the sentence. Accordingly, since a sentence at hard labor was the only sentence that could be imposed, we correct the sentence by providing that it be served at hard labor.

We remand to the trial court for correction of the minutes and commitment order, and for transmission of the amended record to the Department of Corrections.

**CONVICTIONS AFFIRMED; SENTENCES ON COUNTS 2 AND 3 (SOLICITATION FOR MURDER) AFFIRMED; LIFE SENTENCE ON COUNT 1 AMENDED TO PROVIDE IT BE SERVED AT HARD LABOR AND AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF THE MINUTES AND COMMITMENT ORDER, AND FOR TRANSMISSION OF THE AMENDED RECORD TO THE DEPARTMENT OF CORRECTIONS.**

---

[2] The minute entry indicates the sentence is at hard labor. However, when there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So. 2d 732, 734 (La. 1983).

[3] An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C.Cr.P. art. 882(A).

11